UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SCOTT G. KETCH,

Plaintiff,

v.

CAROLYN W. COLVIN,[1]
ACTING COMMISSIONER OF SOCIAL SECURITY,

Defendant.

**DECISION AND ORDER**
12-CV-1104S

1.    Plaintiff  Scott  Ketch  challenges  an  Administrative  Law  Judge's  ("ALJ")

determination that he was not mentally disabled within the meaning of the Social Security

Act ("the Act").

2.    On April 14, 2009, Ketch filed applications for Disability Insurance Benefits

("DIB") and Supplemental Security Income ("SSI") under, respectively, Titles II and XVI of

the Act, claiming an inability to work since March 30, 2006 due to bipolar disorder. (R. 108-

12.)[2] The applications were denied on July 23, 2009. (R. 68-73.) Ketch then requested a

hearing, which was held before ALJ Timothy Trost on December 14, 2010. (R. 38-65.)

Ketch was represented by counsel at the hearing, at which he appeared in person and

testified. (Id.)

3.    ALJ Trost considered the applications *de novo* and, on March 17, 2011,

issued a written decision finding Ketch was not disabled. (R. 13-34.) Ketch filed a request

---

[1]  Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013. She is substituted for Michael J. Astrue as the Defendant in this action under Rule 25(d) of the Federal Rules of Civil Procedure.

[2]  Citations to the administrative record are designated as "R."

for review with the Appeals Council, which denied the request on September 24, 2012. He commenced this civil action on November 8, 2012, challenging the Commissioner's final decision.[3]

4.      On August 2, 2013, the Commissioner and Ketch each filed a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 10 and 11.) The motions were fully briefed on September 20, 2013, at which time this Court took the matter under advisement.  For the reasons set forth below, the Commissioner's motion is denied, Ketch's motion is granted, and this case is remanded to the Commissioner.

5.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla"; it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

6.      "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the

---

[3]  The ALJ's January 4, 2011 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7.      The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

8.      The five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.   If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the

[Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

9.      Although the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

10.      In this case, the ALJ made the following findings with regard to the five-step process: (1) Ketch had not engaged in substantial gainful activity since his alleged disability onset date of March 30, 2006 (R. 15); (2) his bipolar disorder and affective disorder were severe impairments within the meaning of the Act (Id.); (3) these impairments did not meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. 16); (4) Ketch had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with specified nonexertional limitations[4] (R. 17); (5) he was unable to perform his past relevant work (R. 31); and (6) jobs existed in substantial

---

[4] Specifically, "[t]he claimant maintains sufficient attention and concentration to follow simple instructions, learn new tasks and perform complex tasks with supervision. Due to poor frustration tolerance, he should work primarily alone with only occasional interaction with co-workers, supervisors and the general public, in a low stress environment with only occasional changes in the work setting." (R. 17.)

number in the national economy that an individual of his age, education, past relevant experience, and RFC could perform (R. 32).

11.     Ketch challenges the determination on the grounds that: (a) the ALJ erred in failing to use a vocational expert ("VE") to assess the impact of Ketch's nonexertional impairments, and (b) he failed to properly evaluate and weigh all medical opinions in the record.

12.     "If a claimant has nonexertional limitations that 'significantly limit the range of work permitted by his exertional limitations,' the ALJ is required to consult with a vocational expert." Zabala v. Astrue, 595 F.3d 402, 410 (2d Cir. 2010) (quoting Bapp v. Bowen, 802 F.2d 601, 605 (2d Cir. 1986)). A nonexertional impairment will "significantly limit" a claimant's range of work "when it causes an additional loss of work capacity beyond a negligible one, or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." Zabala, 595 F.3d at 411 (internal quotation marks and alteration omitted).

13.     Where, as here, no exertional impairment is found, unskilled jobs at all exertional levels constitute the potential occupational base. SSR 85-15, 1985 SSR LEXIS 20, at *10-11 (Jan. 1, 1985). The SSA has defined the basic mental demands of unskilled work to include: understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 416.921(b); see also 1985 SSR LEXIS 20, at *11 (noting that the claimant must be able to meet these demands on a sustained basis). "A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base." 1985 SSR LEXIS 20 at *11.

14.     In this case, the ALJ found that Ketch should work primarily alone, with only occasional interaction with co-workers and supervisors, and only occasional changes in the work setting. He went on to acknowledge that Ketch's "ability to perform work at all exertional levels has been compromised by [his] nonexertional limitations," but concluded that "these limitations have little or no effect on the occupational base of unskilled work at all exertional levels." Based on this conclusion, the ALJ proceeded to apply the medical vocational guidelines (i.e., the grids) to determine that Ketch was not disabled. (R. 32.)

15.     Ketch maintains, and the Court agrees, that the nonexertional limitations set forth by the ALJ, including the need to work under remote or indirect supervision and the inability to interact with co-workers on more than an occasional basis, are significantly limiting with regard to the basic mental demands of unskilled work. As such, reliance on the grids was inappropriate, and the case will be remanded. On remand, the Commissioner is directed to consult a vocational expert to determine whether there are jobs existing in significant numbers in the national economy that an individual with Ketch's RFC can perform. It may well be that there are, but an individualized assessment is called for here.

16.     Ketch next contends that the ALJ failed to properly evaluate and weigh the opinion of Dr. Holt, his treating psychiatrist, as required under 20 C.F.R. §§ 404.1527(c) and 416.927(d); see also SSR 96-6p, 1996 SSR LEXIS 3. At the outset, Ketch concedes the ALJ properly declined to give Dr. Holt's opinion "controlling weight" "because [the opinion] is not consistent with treatment notes and other substantial evidence of record.'" (Docket No. 11-1 at 15, (citing R. 31).) Where a treating source's opinion is not given controlling weight, the ALJ must consider six factors in deciding what weight should be given: whether the medical source has examined the claimant, the length of the treatment relationship and frequency of examination, nature and extent of the treatment relationship,

whether the medical source presents relevant evidence to support the opinion, the consistency of the opinion with the record as a whole, and the medical source's area of specialty. 20 C.F.R. § 404.1527(c)(1)-(6). According to Ketch, the ALJ erred by assigning only "some weight" to Dr. Holt's opinion because he had met with Ketch just three times, without taking into account the fact that Dr. Holt would have had access to almost two years of prior treatment notes. (Docket No. 11-1 at 15 (citing R. 29, 291).)

17.    Dr. Holt replaced Ketch's initial psychiatrist, Dr. Marshall. The ALJ exhaustively summarized treatment notes from Dr. Marshall from the period January 15, 2009 through August 5, 2009 (R. 233-53), Dr. Holt from October 13, 2010 through December 1, 2010 (R. 227-30), and the counselor Ketch met with for the period January 6, 2009 to December 1, 2010 (R. 254-291). In evaluating Dr. Holt's opinion, the ALJ expressly considered his limited contact with Ketch, the content of his treatment notes, and whether his opinion was consistent with records from the prior psychiatrist, Dr. Marshall, the long-term counselor, and other evidence of record. Based on these factors, he assigned only "some weight" to Dr. Holt's opinion.

18.    The Court finds no error in the ALJ's evaluation, which is supported by substantial evidence. Accordingly, remand on this basis is unwarranted.

****

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 10) is DENIED;

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 11) is GRANTED, and this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this Decision and Order;

7

;

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.


Dated: February 3, 2014
        Buffalo, New York

_____
          /s/William M. Skretny
          WILLIAM M. SKRETNY
              Chief Judge
      United States District Court